UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HOWARD SULLIVAN,

                 Petitioner,

        V.

SUPERINTENDENT,
Elmira Correctional Facility,,

                 Respondent.

_____

**REPORT AND
RECOMMENDATION**

04-CV-444
(GLS/VEB)

## I. INTRODUCTION

Petitioner Howard Sullivan, acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner is an inmate at the Green Haven Correctional Facility.  In 1999, he was convicted in a New York State court of two counts of First Degree Assault and one count of Third Degree Criminal Possession of a Weapon and was sentenced to twenty (20) years in prison.  Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned on November 5, 2007 by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 22).

## II. BACKGROUND

### A.    Facts

The following factual summary is derived from the state court records.  On the

afternoon of March 20, 1999, Jacqueline Billingsley was slashed in the face with a retractable razor blade while walking home from a grocery store in Albany, New York. (T at 86, 89, 91-93).[1] The injury required 200 stitches and left a permanent scar. (T at 95). Billingsley later identified Petitioner from a photo array as her attacker. Petitioner was arrested on March 24, 1999. While in custody, he admitted to slashing Billingsley's face, but claimed it was unintentional and happened while he was in a fight with another person.

On April 16, 1999, an Albany County Grand Jury returned a three count indictment which charged Petitioner with two counts of Assault in the First Degree, in violation of New York Penal Law ("NYPL") §120.10(1) and § 120.10(2)[2] ; and Criminal Possession of a Weapon in the Third Degree, in violation of NYPL §265.02(1).

### B.     State Trial Court Proceedings

The Honorable Larry J. Rosen, Albany County Court Judge, presided over Petitioner's trial proceedings. The trial began on November 1, 1999 and concluded on November 5, 1999. Petitioner was represented by James Banagan, Esq. At the conclusion of the trial, the jury found Petitioner guilty of all counts in the indictment. (T at 471-472).

On January 11, 2000, Petitioner was sentenced as a second felony offender to a determinate sentence of twenty (20) years for each of his convictions of Assault in the First Degree, and three and one-half (3 ½ ) to seven (7) years for his conviction of Criminal Possession of a Weapon in the Third Degree. (S at 19-20).[3] Petitioner's sentences were

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial.

[2]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

[3]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

to run concurrently.  (S at 19-20).  Therefore, Petitioner's total aggregate sentence was twenty (20) years.

## C.    State Appellate Proceedings

Petitioner, represented by David J. Taffany, Esq., appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner asserted four arguments before the Appellate Division: (1) that the victim's in court identification should not have been permitted because of a suggestive photographic array; (2) that the prosecutor's summation contained comments constituting prosecutorial misconduct; (3) that the third count of Criminal Possession of a Weapon should have been dismissed for insufficient evidence; and (4) that the verdicts with respect to counts one and two were against the weight of the evidence.

In a decision issued on December 5, 2002, the Appellate Division affirmed Petitioner's conviction.  People v. Sullivan, 752 N.Y.S.2d 733 (3d Dep't 2002).  Petitioner's application for leave to appeal to the Court of Appeals was denied on July 9, 2003. People v.Sullivan, 100 N.Y.2d 587 (2003).

## D.   Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on April 20, 2004, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1). Thereafter, he filed an amended petition on June 16, 2004 to comply with an Order issued

by the Honorable Gary L. Sharpe, United States District Judge[4]. (Docket No. 7).  In his

Petition, Petitioner asserts the same four grounds for relief that he did before the Appellate

Division.  Respondent filed a Response and memorandum of law in opposition on October

22, 2004.  (Docket No. 15).

For the reasons that follow, this Court recommends that the petition for habeas

corpus relief be DENIED.

## III. DISCUSSION

### A.    Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C.

§ 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA").  Under  AEDPA, federal courts must give substantial deference to a state court

determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C.

§ 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has

stated that an "adjudication on the merits" is a "substantive, rather than a procedural,

resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second

Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to

constitute an "adjudication on the merits" for purposes of AEDPA. Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of

a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's

---

[4]Petitioner's original petition did not contain the date upon which the New York Court of Appeals denied leave to appeal from the Appellate Division's decision affirming his conviction.  (See Dkt. No. 1, Pet.).  On June 1, 2004, District Court Judge Gary L. Sharpe issued a Decision and Conditional Order of Dismissal directing Petitioner to file an amended petition setting forth the date upon which leave to appeal was denied. (Dkt. No. 6).  Petitioner filed an Amended Petition on June 16, 2004, in which he included the pertinent dates. (Dkt. No. 7). On June 30, 2004, Judge Sharpe issued an Order accepting Petitioner's habeas petition as timely filed.  (Dkt. No. 8).

adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.     Petitioner's Claims**

        As set forth above, Petitioner asserts four claims for habeas relief: (1) that the victim's in court identification should not have been permitted because of a suggestive photographic array; (2) that the prosecutor's summation contained comments constituting prosecutorial misconduct; (3) that the third count of Criminal Possession of a Weapon should have been dismissed for insufficient evidence; and (4) that the verdicts with respect to counts one and two were against the weight of the evidence.  This Court will address each claim in turn.

        **1.     In Court Identification by Victim**

        Petitioner's first claim for habeas relief is that the trial court erred in allowing the victim to identify him in court, because the prosecution failed to demonstrate that the pre-trial identification procedure was proper or that the identification rested upon independent knowledge.  In particular, Petitioner claims that the photo array from which the victim identified him was unduly suggestive.

        A criminal defendant has the right under the Due Process Clause of the Constitution

6

to be free from suggestive identification procedures that create a "very substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The first prong of the test for determining admissibility of a pre-trial identification inquires into whether the identification procedure was unnecessarily suggestive. E.g., Manson, 432 U.S. at 114, 97 S.Ct. 2243; accord Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir.2001)

"'A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification.' " Raheem, 257 F.3d at 133 (quoting United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)).

For example, as the Supreme Court noted in Stovall v. Denno, the "show-up," or "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). A show-up, as opposed to a line-up or photo array, has been described as "inherently suggestive" because the defendant is presented singly to the witness by the police. Brisco v. Phillips, 376 F.Supp.2d 306, 313 (E.D.N.Y.2005) (citing Brodnicki v. City of Omaha, 75 F.3d 1261, 1265 (8th Cir.1996)).

### a.   Photo Array was Not Unduly Suggestive

In this case, the victim was shown a photographic array that included Petitioner's picture.  Petitioner argues that the array was unduly suggestive because he was the only person in the array wearing a red shirt and that the photograph appeared to be lit differently. After examining the photo array at issue in this case, the state courts concluded that it was

not unduly suggestive (See Dkt. No. 15, Record on Appeal, at 585). A combined Wade[5]/Huntley[6] hearing was held on September 17, 1999. (Dkt. No. 15, Record on Appeal, at 16-82).

In a written Decision and Order dated October 5, 1999, the trial court concluded that the procedure used and the circumstances surrounding the photographic identification were "in conformity with constitutional requirements." (Dkt. No. 15, Record on Appeal, at 86). The court noted that Detective Anthony Ryan created the photo array using eight full face color photographs of young African-American men of similar age, skin tone and hair length, and that had "corn-row" styled hair. (Id. at 84, 86). The trial court also noted that all of the photos were of the same size and finish. (Id. at 86). The court concluded that Petitioner failed to "demonstrate undue suggestiveness" and that nothing in the photographs indicated that the police had "pre-selected [Petitioner] for identification." (Id. at 86-87).

The Appellate Division reviewed the issue and affirmed the trial court's finding. It also noted that the men in the photos appeared to be of the same age, and to have the same skin tone, hair style, and hair length. Sullivan, 300 A.D.2d at 690, 752 N.Y.S.2d 733. The Appellate Division concluded that Petitioner's "red shirt was not so distinctive as to be conspicuous, particularly since the other individuals were dressed in varying, nondescript apparel," and that the lighting difference did not taint the array. Id. Finally, the Appellate Division held that since there was an overall resemblance between Petitioner and the other individuals included in the array, there was nothing to support Petitioner's claim that the

---

[5]United States v. Wade, 388 U.S. 218 (1967).

[6]People v. Huntley, 255 N.Y.S.2d 838 (1965).

8

array was unduly suggestive.  Id.

Upon review of the photo array, in light of the descriptions given by the victim and eye witnesses, this Court finds that the Appellate Division's conclusion with respect to the photo array was neither contrary to clearly established federal law nor based upon an unreasonable determination of the facts in light of the evidence presented.  (Dkt. No. 15, Record on Appeal, at 585).

There is no requirement that other persons included in an identification procedure look nearly identical to the defendant, that they wear the same clothing or that each picture must display exactly the same lighting in order for a photo array to pass constitutional muster.  United States v. Reid, 517 F.2d 953, 965 n. 15 (2d Cir. 1975).  While the copy of the photo array before this Court is a black and white photocopy, it nevertheless appears that each of the men in the array had facial features and hairstyles similar to Petitioner. (Id.).[7]

Even if Petitioner was the only person in the array wearing a red shirt, and the lighting in his photo slightly varied from the others (which the Court cannot definitively confirm based upon the copy of the array), those factors do not render the array unduly suggestive.  See, e.g., United States v. Bautista, 23 F.3d 726, 731 (2d Cir. 1994) ("While it is true that the photograph of [the defendant] is slightly brighter and slightly more close-up than the others, we find that these differences did not render the array suggestive ... The differences complained of ... 'would hardly suggest to an identifying witness that [the defendant] was more likely to be the culprit."); United States v. Bubar, 567 F.2d 192, 198-99 (2d Cir. 1977)

---

[7]The photo array shown to the victim and used at trial was in color.

(photo array was not impermissibly suggestive where defendant argued, inter alia, that "the focus and contrasts were sharper in his photograph" and that "a narrow strip of light not in the other photographs ran across the field above his head"); Gordon v. Mantello, Nos. 98-CV-7680, 03-MISC-0066, 2003 WL 21817085, at *3  (E.D.N.Y. Jul 29, 2003)(photo identification procedure was not unduly suggestive, on grounds that defendant was only person in photo array wearing a hospital gown and that one "filler" was of a darker complexion than him, where there was nothing suspicious or incriminating about defendant's photo); United States v. Padilla, 94 CR. 313, 1994 WL 681812 at *6 (S.D.N.Y. Dec. 5, 1994) ("Even if there are some physical differences, a photo-array or line-up will not be suggestive so long as the other pictures or stand-ins sufficiently resembled the defendant to allay any concern that the witnesses might have been unfairly influenced in their selection of him by any of the noted physical differences between him and the others.'"). The decisions of the state trial and appellate courts in this case were not "contrary to" or an "unreasonable application" of Supreme Court precedent.  Accordingly, because the photo array was not suggestive, Petitioner's first ground for habeas relief should be DENIED.

### b.    Identification was Independently Reliable

In the alternative, even assuming arguendo that  the pre-trial identification procedure had been unduly suggestive, this Court is satisfied that the victim's identification of Petitioner was independently reliable under the totality of the circumstances. See Biggers, 409 U.S. at 198-200.  The evidence at trial established that the victim had seen Petitioner three or four times in the neighborhood, and as recently as one month before the incident. (T 90, 110-11, 113, 124).  She had ample opportunity to view the perpetrator at the time of the crime, as the attack took place in the daylight, and he walked toward her with a shorter

companion, giving her an opportunity to observe his face and clothing and provide a description. (T 86, 89-92, 104-114).

The victim was sharply focused on the perpetrator as he walked toward her, because she had to step out of his way. (T 89-93).  The victim did not hesitate when she chose Petitioner's photograph from the array.  (Dkt. No. 15, Record on Appeal, at 43-44).  These facts suggest that, even if the array had been unduly suggestive, the victim had a sufficient independent basis upon which to make an in-court identification.  See, e.g., Dunnigan v. Keane, 137 F.3d 117, 128 (2d Cir.1998) (identification procedure independently reliable based on witness's opportunity to view petitioner during the crime); Curry v. Burge, No. 03 Civ. 0901, 2004 WL 2601681, at *21 (S.D.N.Y. Nov. 17, 2004)(victim's three sightings of the shooter prior to a line-up made the victim's in-court identification independently reliable even though the victim accidentally saw petitioner's photograph on a detective's desk). Therefore, this Court finds that Petitioner is not entitled to habeas relief on this basis.

### 2.    Prosecutorial Misconduct

Petitioner next argues that the prosecutor's summation deprived him of a fair trial because the prosecutor made inflammatory remarks about Petitioner being a gang member and suggested that the crime was part of a gang initiation, when there was no evidence in the record to support that conclusion.

The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited.  In order to overturn a conviction, the Court must find that the prosecutor's comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights. See Donnelly v. DeChristoforo, 416 U.S. 637, 647-48

(1974); <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir.1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); <u>accord</u> <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 252 (2d Cir.1998).

Thus, to be entitled to relief, Petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.' " <u>Tankleff</u>, 135 F.3d at 252 (quoting <u>Bentley v. Scully</u>, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted in original)). "Rarely are comments in a prosecutor's summation 'so prejudicial that a new trial is required.' " <u>United States v. Germosen</u>, 139 F.3d 120, 128 (2d Cir.1998) (quoting <u>United States v. Forlorma</u>, 94 F.3d 91, 93 (2d Cir.1996) (quotations omitted).   Reversal of a defendant's conviction is warranted only where " 'the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial.' " <u>Id.</u> (quoting <u>Forlorma</u>, 94 F.3d at 94).

In determining whether a defendant has suffered actual prejudice as a result of the prosecutorial misconduct, the reviewing court considers three key factors: "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." <u>Floyd</u>, 907 F.2d at 355 (quoting <u>United States v. Modica</u>, 663 F.2d 1173, 1181 (2d Cir.1981) *(per curiam)); <u>accord</u>, e.g., <u>Germosen</u>, 139 F.3d at 128; <u>United States v. Miller</u>, 116 F.3d 641, 683 (2d Cir.1997); <u>United States v. Perez</u>, 144 F.3d 204, 209 (2d Cir. 1998).

Here, the Appellate Division considered Petitioner's claim and rejected it, finding that the "comments made by the prosecutor were either responsive to defendant's summation

or were not so prejudicial as to constitute reversible error in light of the overwhelming evidence of defendant's guilt." Sullivan, 300 A.D.2d at 690, 752 N.Y.S.2d 733 (citations omitted). The record supports the Appellate Division's findings.

During his summation, defense counsel argued that the jury had to decide whether Petitioner intentionally cut the victim, and, to do so, it had to decide whether to believe the victim, or to believe Petitioner's statement to police. (T at 369-75). Counsel argued that the victim's version was not credible because she offered no reason for the unprovoked attack. (T at 373-80). He asked the jury not to "fall into that same trap" that the police did when they simply believed the victim without seeking corroboration of her story. (T at 387-88).

The prosecutor, in response, pointed out that defense counsel suggested there was no motive for the attack. (T at 391). In the midst of explaining that he did not have to prove a motive, the prosecutor stated:

> And, you know, it was suggested to you that what could possibly have led to this? Could it have happened that way? You know, essentially what's being suggested to you is motive. I just want to make something very clear. Motive is not an element of this crime. I'm not required at any point in time to prove what the motive is in this case. You know, there are a thousand different reasons why this person, Jacqueline Billingsley, could have been slashed. You know, the slasher may not like 38-year-old women, the slasher may be undergoing an initiation into a gang.
>
> Mr. Banagan [defense counsel]: Objection.
>
> The Court: Overruled. You can continue.
>
> Mr. Clyne [prosecutor]: There are a thousand different reasons. And you don't have to pick any of them because motive is not part of this case.

(T 391).

13

These comments, viewed in context and in light of the remarks by defense counsel, were a fair response to defense counsel's repeated suggestions that no motive had been offered for the attack.  See, e.g., Darden v. Wainwright, 477 U.S. 168, 182 (1986) (finding no substantial prejudice, in part because "[m]uch of the objectionable content was invited by or was responsive to the opening summation of the defense"); Osorio v. Conway, 496 F. Supp. 2d 285, 301 (S.D.N.Y. 2007)(noting that statements made during summation that are a fair response to defense counsel's remarks are permissible); Moore v. Warden, Southport Corr. Fac., 380 F. Supp. 2d 321, 331 (S.D.N.Y. 2005) ("As the prosecutor's first three comments were responses to Moore's counsel's summation, their effect on the trial was not substantially prejudicial. Where a prosecution comment is a rejoinder to defense counsel's comments, that factor ameliorates the effect of an objectionable prosecution comment upon the fairness of a trial.").  "Defendant cannot now complain about the issues raised and the atmosphere created by his own making through the defense summation." United States v. Tocco, 135 F.3d 116, 130 (2d Cir.1998).

Moreover, assuming arguendo that the trial court's failure to sustain defense counsel's objection to the remark concerning gang status was questionable because the trial court overruled defense counsel's objection and did not issue any curative instructions, the trial court's jury charge was sufficient to correct any potential prejudice.  The court instructed the jury before the summations that nothing the "attorneys say is evidence in this case." (T at 361).  In the final jury instructions, the court further instructed that "[A]rguments made by counsel are not evidence and must not be considered by you.  The summations were not evidence. Both counsel suggested to you all sorts of inferences and conclusions you might draw from the evidence.  If you find those to be logical, you may accept them.  If you find

14

them to be illogical, you may reject them." (T 409-410). This Court must presume, in the absence of any evidence to the contrary, that the jury followed the court's instructions. See, e.g., Smith v. Torres, 543 U.S. 37, 46 (2004); Moore, 380 F. Supp. 2d at 331; Chase v. Berbary, 404 F. Supp. 2d 457 (W.D.N.Y. 2005).

Finally, Petitioner cannot show that he suffered prejudice as a result of the comments. This Court has reviewed the record in its entirety, and finds that there is no reasonable possibility that, but for these isolated comments by the prosecutor, Sullivan would have been acquitted.

As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." Modica, 663 F.2d at 1181; see also Bentley, 41 F.3d at 824 (holding that review of a habeas corpus challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct.").

As discussed below, the proof of Petitioner's guilt was sufficient to support the verdict. This Court finds that there is no indication that the prosecutor's single remark during summation had a substantial and injurious effect or influence in determining the jury's verdict. Tankleff, 135 F.3d at 252.

Accordingly, Petitioner's second claim for habeas relief should be DENIED.


### 3.    Sufficiency of the Evidence - Criminal Possession of a Weapon

Petitioner's third claim for habeas relief is that the evidence was insufficient to convict

15

him of Criminal Possession of a Weapon in the Third Degree because there was no evidence that he possessed the razor blade with intent to use it unlawfully against another person.  Respondent asserts that this claim is also without merit.

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).  A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)).  Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

To sustain Petitioner's conviction for Criminal Possession of a Weapon in the Third Degree, the prosecution had to prove that Petitioner possessed the razor with the intent to use it unlawfully against another person.  NYPL §§265.02(1), 265.01(2); Loving v. People of the State of New York, No. 04-CV-1284, 2007 WL 1825401, at *5 (E.D.N.Y. Jun. 21,

16

2007).   Intent may not be presumed from Petitioner's simple possession of the razor.

People ex rel Pena v. New York State Div. of Parole, 442 N.Y.S.2d 99, 100 (2d Dep't. 1981).

The state must also independently prove that Petitioner intended to use the razor unlawfully.

Id.  Intent may be inferred from the circumstances, including the actions of the accused, and

it may be proven by direct or circumstantial evidence.  Stone v. Stinson, 121 F. Supp. 2d

226, 247 (W.D.N.Y. 2000); People v. Price, 825 N.Y.S.2d 868, 869 (4th Dep't 2006).

Here, Petitioner challenges only the element of intent, claiming that there was no

proof that he intended to use the razor unlawfully when he was arrested in possession of

it days after the assault.  (Dkt. No. 1, at 3, 7).[8]  This count of the indictment, however, relates

to Petitioner's possession of the razor on the day he was arrested - March 24, 1999.  (See

Dkt. No. 15, Record on Appeal, Indictment, at p. 6, People's Brief, at pp. 12-13).   The

Appellate Division held that there was sufficient evidence to establish Petitioner's intent to

use the razor unlawfully:

> [Officer] Kimbrough testified that defendant was spotted on a sidewalk by him;
> at the time, Kimbrough was plain-clothed and riding in his personal car. When
> the officer asked defendant his name, defendant appeared to take something
> out of his pocket and stood in a defensive stance. As the officer exited his
> vehicle, defendant appeared to have something in his hand. When defendant
> realized that Kimbrough was a police officer he exclaimed, "Oh, Oh, you're
> police. I didn't know, I didn't know," and dropped the object that was in his
> hand. The object dropped was a razor/utility knife with the blade extended out
> of the handle. From this testimony, the jury could have reasonably concluded
> that defendant intended to use the weapon unlawfully against Kimbrough prior
> to the officer's identification of himself. Hence, we find the evidence legally

---

[8]  The record established the other elements of this crime beyond a reasonable doubt.  Petitioner
possessed the razor blade, and dropped it, when approached by Officer Kimbrough.  (T. 295-98).  He also
had a prior conviction for purposes of Penal Law §265.02(1).  He was arraigned on a special information
and admitted he had previously been convicted for robbery in the third degree in Albany County Court on
or about April 20, 1998.  (T 137).

> sufficient to support the conviction of criminal possession of a weapon in the third degree.

Sullivan, 300 A.D.2d at 691, 752 N.Y.S.2d 733. Those findings are supported by the record evidence at trial, (T at 292-310), and the Appellate Division's decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

Moreover, even if this count of the indictment related to the assault charges against the victim on March 20, 1999, as Petitioner asserts, the evidence would still be sufficient. The evidence established that Petitioner cut the victim's face with an object that was concealed in his hand. (T 91-92, 180-81). The object used created a cut with "very clean edges" consistent with a razor blade. (T 268, 271-72). Petitioner possessed a retractable razor blade when he was arrested three days after the assault. (T 297-98). This presented enough circumstantial evidence for the jury to have inferred that the retractable razor blade Petitioner possessed on March 24, 1999 was that used to cut the victim's face. See, e.g. Loving, 2007 WL 1825401, at *6 (trial judge could find, based upon circumstantial evidence, that a "black handled steak knife that was used to stab Holloway was the same black-handled steak knife recovered from Manning, regardless of the lack of "testing" [for blood])(citing United States v. Sureff, 15 F.3d 225, 228 (2d Cir.1994) (recognizing that "guilt beyond a reasonable doubt may be established entirely by circumstantial evidence"); U.S. v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993)(citations omitted) ("[A] conviction may be based upon circumstantial evidence and inferences based upon the evidence.").

Under the facts and circumstances of this case, it was not irrational to have found that each element of the crime of Criminal Possession of a Weapon in the Third Degree was proven beyond a reasonable doubt. The Appellate Division did not act contrary to or

unreasonably apply Supreme Court precedent in rejecting Petitioner's claim.  Accordingly, Petitioner's third claim for habeas relief should be DENIED.

### 4.   Sufficiency and Weight of the Evidence- Counts 1 & 2

Petitioner's final claim for habeas relief is that the verdicts with respect to the two counts of Assault in the First Degree were not supported by the weight of the evidence. Petitioner claims that there was insufficient evidence to establish that he intended to cause serious physical injury to the victim.

As an initial matter, the Court notes that the arguments advanced in Petitioner's Memorandum of Law are virtually identical to those contained in the direct appeal brief. (See Mem. at pp. 20-25; Dkt. No. 15, Petitioner's Brief to Appellate Division, at 12-16).  As a result, many of Petitioner's arguments are couched as "weight of the evidence" challenges.

"Weight of the evidence" claims derive from New York Criminal Procedure Law ("CPL") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. Law § 470.15(5); People v. Bleakley, 69 N.Y.2d 490, 495 (1987).  Since weight of the evidence claims are grounded in the state criminal procedure statute, they are not cognizable on habeas review. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (habeas corpus review not available to remedy alleged error of state law); Hogan v. Livingston Corr. Fac., No. 05-CV-6440, 2007

WL 2907322, at *8 (W.D.N.Y. Oct. 3, 2007)("Since a 'weight of the evidence' claim is purely a matter of state law, it is not cognizable on habeas review."); Stein v. Artus, No. 04-CV-0439, 2007 WL 2778914, at *7 (N.D.N.Y. Sept. 19, 2007)(same); Welch , 2007 WL 2028048, at *7.

However, Petitioner's claim also appears to raise a question of the sufficiency of the evidence, since he is challenging the level of proof offered at trial to establish the essential elements of each assault charge.  Because Petitioner is *pro se*, his claims will be liberally construed as "insufficiency of the evidence" claims.  See Welch, 2007 WL 2028048 at *7 (recognizing that complaints of *pro se* petitioners are to be considered liberally in their favor and, therefore, construing *pro se* petitioner's "weight of the evidence" claims as "insufficiency of the evidence" claims); Hernandez v. Conway, No. 03-CV-0852, 2007 WL 1213334, *5 (W.D.N.Y. Apr. 25, 2007)(same); Davis v. McLaughlin, 122 F. Supp. 2d 437, 441 (S.D.N.Y. 2000) (same).

To sustain Petitioner's conviction for first degree assault under Count One of the Indictment, the prosecution was required to prove that Petitioner had the intent to cause serious physical injury to the victim and that he did so by means of a "dangerous instrument." NYPL §120.10(1).  "Serious physical injury" includes injury that causes "serious and protracted disfigurement."  Id. at §10.00(10).  A "dangerous instrument" is one that, under the circumstances in which it is used, is "readily capable of causing death or other serious physical injury."  Id. at §10.00 (13).

To sustain Petitioner's conviction for first degree assault under Count Two of the Indictment, the state had to prove that Petitioner intended to, and did, disfigure the victim seriously and permanently.  NYPL §120.10(2).  "In deciding the question of the defendant's

intent, a jury may look to the nature of the act the defendant is accused of perpetrating" and the actual injuries inflicted. People v. Tran, 729 N.Y.S.2d 851, 852 (N.Y. Sup. Ct., Queens Co. 2001), aff'd 764 N.Y.S.2d 636 (2d Dep't 2003), lv. denied 1 N.Y.3d 581 (2003).

Here, the evidence clearly established that the victim suffered serious physical injury and protracted disfigurement.  Petitioner admitted to cutting the victim's face, resulting in an eight-inch laceration that required over 200 stitches to close (T at 90-96).  The cut extended from her left ear up across the bridge of her nose.  (T at 269-71, 278-79).  It penetrated through the victim's nostril, requiring repair to the cartilage and lining of the nose.  (T at 271-73).

Photographs of the victim's injury, which Dr. Richard Diramone testified underestimated its severity, were taken at the hospital and admitted into evidence (T at 158, 267). The scar on the victim's face, still visible eight months after the assault, is permanent. (T at 276).  See, e.g., People v. Suarez, 298 A.D.2d 218, 748 N.Y.S.2d 550 (1st Dep't 2002)("The credible evidence clearly established the element of serious physical injury, in that as a result of being slashed in the face and head with a surgical razor, the victim sustained a permanent loss of the range of motion of his head and seriously disfiguring scars.").

Contrary to Petitioner's claim, the evidence was also sufficient to establish his intent to cause serious physical injury and protracted disfigurement.  Petitioner was walking with his companion on the sidewalk closest to the homes that lined the street, when he passed the victim.  His companion was between himself and the victim.  (T at 90-91, 105-108, 120-23).  In order to cut the victim's face, Petitioner had to make a conscious effort to reach his hand in front of his companion toward the victim's face.  (T at 107, 121).

21

Petitioner's actions, as well as the resulting injury, provided sufficient proof of his intent to sustain Petitioner's convictions on Count One and Count Two of the indictment. *See* People v. Askernee, 683 N.Y.S.2d 200, 201 (1st Dep't 1998)("defendant brought to the encounter a solid metal, broad-bladed knife, eight to ten inches long, with a spike on the end of the handle. He repeatedly thrust the knife in the direction of the complainant's face. From these circumstances it was proper for the jury to infer the requisite intent" to cause the serious physical injury to the victim's lip that resulted), *aff'd* 93 N.Y.2d 884 (1999); People v. Truesdale, 589 N.Y.S.2d 322 (1st Dep't 1992)(evidence sufficient to sustain conviction under Penal Law §120.10(2) where defendant confronted victim and repeatedly struck her in the face, evincing an intent to cause serious and permanent disfigurement to the victim), *lv. denied* 81 N.Y.2d 766 (1992); People v. Wade, 590 N.Y.S.2d 245, 246 (2d Dep't 1992)(evidence sufficient to sustain conviction under Penal Law §120.10(2) where defendant intended to, and did, cut the victim's face with a razor, requiring stitches across his face from his ear to his mouth, leaving a scar visible eight months after the assault), *lv. denied* 81 N.Y.2d 894 (1993).

To the extent that Petitioner claims the verdicts were inconsistent with his statement to police, that claim also lacks merit. (See Dkt. No. 1, at p. 22-23). While Petitioner admitted he cut the victim's face, he denied doing so intentionally. (T at 225-28, 236-38). The jury was free to accept or reject Petitioner's version of events, and apparently resolved any inconsistencies in favor of the state. That finding will not be disturbed on habeas review. See Guiterrez v. Ricks, No. 02 Civ. 3780, 2002 WL 31360417, at *8 (S.D.N.Y. Oct. 21, 2002)(the fact finder's " 'decision was largely a matter of choosing whether to believe [the defense's] version of the events or to believe the version offered by the State. The [fact

22

finder] chose to believe the State's witnesses.... We cannot say that no rational [fact finder] could have found guilt beyond a reasonable doubt on all the evidence." ')(quoting <u>Jamison v. Grier</u>, 01 Civ. 6678, 2002 WL 100642 at *12 (S.D.N.Y. Jan. 25, 2002)).   Accordingly, Petitioner's final claim for habeas relief should be DENIED.


## IV. CONCLUSION

For the reasons stated above, the Court recommends Howard Sullivan's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue.  <u>See</u> 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:      January 2, 2008

Syracuse, New York


## V. ORDERS

Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered  that this Report &

23

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 2, 2008

Victor E. Bianchini
United States Magistrate Judge